J-A03006-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DANIEL DOUGHERTY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRISTINA MAYS | : | |
| | : | |
| Appellant | : | No. 1171 EDA 2025 |

Appeal from the Order Entered April 7, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 2409V7124

BEFORE: BOWES, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED JUNE 10, 2026**

Tristina Mays appeals from the order denying her protection from abuse ("PFA") petition filed against Daniel Dougherty. We reverse and remand.

We glean the following facts from the certified record. Ms. Mays and Mr. Dougherty have two children together, ages ten and thirteen. They have never been married, and although the children live primarily in Mr. Dougherty's home, Ms. Mays frequents his house to care for them. The couple also share a vehicle, a Honda Pilot, which Mr. Dougherty owns but allows Ms. Mays to drive.

The parties' arrangement began to break down and reached a turning point during the afternoon hours of September 3, 2024. Ms. Mays had

_____

[*] Retired Senior Judge assigned to the Superior Court.

previously requested the children's birth certificates and social security cards from Mr. Dougherty, which he failed to provide. She proceeded to remove all doorknobs from the closets in Mr. Dougherty's home while he was at work, where he typically kept important belongings for safekeeping. When he returned home and demanded to know what happened, she threw a pillowcase full of the doorknobs at him. Ms. Mays then called the police to report that Mr. Dougherty had trapped her in his home because his work truck was blocking the Honda Pilot.

Upon arrival, the police spoke with Mr. Dougherty but did not take any action. Mr. Dougherty subsequently left for approximately four to five hours while Ms. Mays remained in the house with the children. When he returned home, Mr. Dougherty took Ms. Mays's car keys to retrieve the doorknobs, which he believed had been moved to the Honda Pilot. She followed him outside and began to taunt him. As Mr. Dougherty started back towards the house, Ms. Mays grabbed his wrist while he was in the threshold of the doorway, and he elbowed her in the face. Thinking that he was going to lock her out, Ms. Mays bit Mr. Dougherty's arm. He shut the door on her leg at least twice and proceeded to lift Ms. Mays up off the ground, carry her a few steps to the kitchen, and slam her into the kitchen cabinets. Ms. Mays was treated in an emergency room for her injuries, suffering bruises on her back, forearm, thigh, and toe.

The parties filed cross PFA petitions on September 10, 2024, and the court issued temporary PFA orders directing the parties to cease contact. In the meantime, Mr. Dougherty was criminally charged with simple assault related to this incident and was convicted of that crime on November 21, 2024. The criminal complaint stated as follows:

> At or around the 4300 block of Salmon Street in the City and County of Philadelphia, [Mr. Dougherty] knowingly, intentionally, or recklessly caused/attempted to cause bodily injury to [Ms. Mays] by shoving her, hitting her with a door, and later picking her up and carr[ying] her back into the house and throwing her against kitchen cabinets, causing injury. [Mr. Dougherty] also took [Ms. Mays's] car keys and did not given [*sic*] them back to her thereby intending to deprive permanently.

Criminal Complaint, 9/17/24, at 2 (Exhibit M-1).

After several continuances requested by the parties, a consolidated hearing on the PFA petitions took place on April 7, 2025. Both Mr. Dougherty and Ms. Mays attested to the above facts, with some inconsistencies and conflicting testimony, but maintained that they had no contact with each other since September 2024. Mr. Dougherty confirmed that he was convicted of simple assault in relation to this scuffle, and he did not appeal the judgment of sentence. He further conceded that at the criminal trial he admitted to "engag[ing] in a physical altercation" with Ms. Mays and "pushing her into the counter[.]" N.T. PFA Hearing, 4/7/25, at 48. Ms. Mays acknowledged that she started the altercation by verbally taunting Mr. Dougherty. She also introduced the criminal complaint filed against him and the sentencing order reflecting that he was convicted of simple assault, which was graded as a

third-degree misdemeanor. Although Ms. Mays brought the notes of testimony of the criminal trial to the hearing, she did not introduce it as an exhibit or discuss its contents.

At the conclusion, the court denied the cross-PFA petitions without prejudice and vacated the temporary PFA orders. Ms. Mays timely appealed, and she and the trial court complied with Pa.R.A.P. 1925.[1] Ms. Mays raises the following questions for our determination:

> A. Whether the [t]rial [c]ourt erred in failing to apply the doctrine of collateral estoppel?
>
> B. Whether the evidence was sufficient to establish [Mr. Dougherty] abused [Ms. Mays] under 23 Pa.C.S. § 6102(a)(1)?

Ms. Mays's brief at 4.

We evaluate these matters together as they are interrelated, and begin with an overview of the relevant legal principles:

> In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly.

*Medina v. Green*, 348 A.3d 1113, 1117 (Pa.Super. 2025) (cleaned up). We also accept the trial court's "findings of fact and credibility determinations if

_____

[1] Mr. Dougherty did not appeal the denial of his PFA petition.

they are supported by the record[.]" **In re D.C.D.**, 105 A.3d 662, 670 (Pa. 2014).

The PFA Act serves to "protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." **K.B. v. Tinsley**, 208 A.3d 123, 127 (Pa.Super. 2019) (cleaned up). In relevant part, the act defines "abuse" as: "The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood: (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury [or] serious bodily injury[.]" 23 Pa.C.S. § 6102(a)(1).

Ms. Mays has invoked the doctrine of collateral estoppel, based upon Mr. Dougherty's conviction for simple assault, to support her claim that the trial court erred in failing to grant the PFA. Collateral estoppel, otherwise known as issue preclusion, "is a broader concept than *res judicata* and operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being re-litigated in a subsequent suit." **E.K. v. J.R.A.**, 237 A.3d 509, 521 (Pa.Super. 2020) (cleaned up). "Collateral estoppel is used offensively when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." **Shaffer v. Smith**, 673 A.2d 872, 874 (Pa. 1996) (cleaned up).

As our Court has explained:

A plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Rogers v. Thomas*, 291 A.3d 865, 877 n.13 (Pa.Super. 2023) (cleaned up).

Further, "it [i]s well established that a criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial." *Id*. at 877. Importantly, "[c]ollateral estoppel not only conclusively establishes the fact of a conviction, but also of the facts actually litigated to reach the conviction." *Id*. (citation omitted).

A person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). Relative to sentencing, the statute provides that "[s]imple assault is a misdemeanor of the second degree unless committed: (1) in a fight or scuffle entered into by mutual consent, in which case it is a misdemeanor of the third degree[.]" 18 Pa.C.S. § 2701(b)(1). We have clarified, however, that:

[§] 2701(b)(1) does not require the Commonwealth to disprove that the offending conduct occurred during a mutual fight or scuffle to establish a simple assault. That the offending conduct occurred during a mutual fight or scuffle is relevant only with respect to the subsequent **grading** of the offense.

. . . . [O]nce the Commonwealth prove[s] that [the defendant] committed a simple assault pursuant to [§] 2701(a)(1), the trial court ha[s] the discretion to grade that offense as a second or

- 6 -

> third degree misdemeanor pursuant to the dictates of [§] 2701(b)(1) and sentence him accordingly.

***Commonwealth v. Hodges***, 193 A.3d 428, 434 (Pa.Super. 2018) (cleaned up, emphasis in original).

With these legal tenets in mind, we turn to Ms. Mays's issues. She maintains that the court erred in failing to apply collateral estoppel to this matter where Mr. Dougherty had been convicted of simple assault for the same incident that prompted her PFA petition. ***See*** Ms. Mays's brief at 9.[2] Relative to the elements of the doctrine, she claims that she met the first prong of identical issues where the elements of simple assault and the definition of abuse under the PFA Act are "practically identical." ***Id***. at 10. As to the remaining prongs, her arguments are as follows:

---

[2] Mr. Dougherty asserts that Ms. Mays waived her claim of collateral estoppel. ***See*** Mr. Dougherty's brief at 14. He insists that although "prior to testimony commencing, counsel for [Ms. Mays] stood up and objected to the entire proceeding moving forward because of collateral estoppel," she failed to file a motion in advance of the PFA hearing and "did not move into evidence any document from any other court, such as an order of sentence, to demonstrate what, if anything, [Mr. Dougherty] was charged with or convicted of." ***Id***. at 14-15 (cleaned up).

Ms. Mays countered that she preserved this issue by objecting at the PFA hearing, and stated that she did not need to file anything prior to the hearing because she raised the doctrine offensively, not defensively. ***See*** Ms. Mays's reply brief at 4. Furthermore, she explains that she admitted as an exhibit Mr. Dougherty's criminal complaint and order of sentence. ***Id***. at 5.

The record confirms Ms. Mays's assertions, and the court in its Rule 1925(a) opinion addressed this issue and provided its rationale. Accordingly, we decline to find waiver.

> There was a final judgment on the merits as Mr. Dougherty had been sentenced and the conviction was not appealed. The Commonwealth and Ms. Mays were in privity as Ms. Mays was the complaining witness/victim in the criminal prosecution. Mr. Dougherty ha[d] a full and fair opportunity to litigate the issue in the criminal case as he went to trial and was represented by counsel. Finally, the determination of whether Mr. Dougherty committed or attempted to commit bodily injury against Ms. Mays was essential to the judgment for [s]imple [a]ssault. Therefore, Ms. Mays established all of the elements of the doctrine of collateral estoppel and the [t]rial [c]ourt committed an error of law in failing to apply it.

*Id*. at 11 (cleaned up).

Ms. Mays further contends that she presented sufficient evidence to support her PFA petition where "it is undisputed that Mr. Dougherty and Ms. Mays are former intimate partners who have two children together" and "Mr. Dougherty committed abuse against Ms. Mays as defined by [§] 6102(a)(1)." *Id*. at 16. Specifically, she argues that "it was conclusively established by Mr. Dougherty's conviction for [s]imple [a]ssault that he caused or attempted to cause bodily injury to Ms. Mays in September 2024." *Id*. at 17. Additionally, she avers that "the [t]rial [c]ourt's adverse credibility findings against Ms. Mays do not undermine the fact that the evidence was sufficient under [§] 6102(a)(1)." *Id*. at 18.

The trial court held that collateral estoppel was inapplicable to this case because "the issues in the two actions are not sufficiently similar or sufficiently material to justify invoking the doctrine of collateral estoppel in the PFA proceeding." Trial Court Opinion, 6/21/25, at 14. It continued, "[s]pecifically, criminal prosecution for simple assault and civil PFA proceedings are not

similar because a conviction of simple assault as a third-degree misdemeanor under 18 Pa.C.S. § 2701 is strictly based on mutual combat where both parties engaged in a fight." *Id*. at 14-15. It further reasoned that the "PFA Act does not require the abuse to rise to the level of criminal conduct," and the "criminal conviction classified as a third-degree misdemeanor is significant because it reflects policy determinations by the Pennsylvania legislature that not all simple assaults are treated equally." *Id*. at 15. Accordingly, the court determined, "[w]hile the criminal conviction itself establishes the occurrence of unlawful physical conduct, the reduced grading by the judge in the criminal case indicates that surrounding circumstances, such as mutual participation of both parties, diminish the seriousness of the offense." *Id*. at 16. In sum, the court found that Ms. Mays failed to establish the first prong of the collateral estoppel test. *Id*.

The court additionally determined that Ms. Mays presented insufficient evidence of abuse. *Id*. at 10-12. It found Ms. Mays incredible regarding the incident in the doorway due to her inconsistent testimony as to which leg Mr. Dougherty hit with the door. *Id*. at 11. The court ultimately "found no evidence that [Mr. Dougherty] acted with intent to inflict bodily harm upon [Ms. Mays]." *Id*. It rather believed that it was "obvious that [Ms. Mays] attempted to invoke the broad powers of the PFA Act to act strategically for the upcoming custody hearing between the parties." *Id*. at 12. In determining that Ms. Mays fell short of her burden, the court maintained that

"the incident did not rise to the level of [a] protection order because the incident was over custody of the minor children and personal property." *Id*. at 6.

Initially, we find that the court erred in determining that the doctrine of collateral estoppel did not apply based on its mistaken belief that Mr. Dougherty's criminal case did not involve the same issue as the instant PFA matter. Indeed, both the criminal and civil cases concerned whether Mr. Dougherty caused bodily injury to Ms. Mays on September 3, 2024. *See* 18 Pa.C.S. § 2701(a)(1) (defining the crime of simple assault as "attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another"); 23 Pa.C.S. § 6102(a)(1) (defining abuse pursuant to the PFA Act as "[a]ttempting to cause or intentionally, knowingly or recklessly causing bodily injury"). The PFA Act adopts the definition of bodily injury provided by our Crimes Code. *See* 23 Pa.C.S. § 6102(b) ("**Other terms.**--Terms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S. (relating to crimes and offenses)."). Accordingly, both the crime of simple assault and the meaning of abuse pursuant to the PFA Act share the same definition of bodily injury. *See* 18 Pa.C.S. § 2301 ("'Bodily injury.' Impairment of physical condition or substantial pain."). The fact that the simple assault case was criminal as opposed to civil is of no moment where the core issue of each litigation was identical. *See Rogers*, 291 A.3d at 877.

- 10 -

The court further erred in concluding that the issues in both cases were not identical since Mr. Dougherty was sentenced to a third-degree misdemeanor. The grading of his simple assault conviction was separate and subsequent to the finding that Mr. Dougherty caused bodily harm to Ms. Mays. *See Hodges*, 193 A.3d at 434. Moreover, the fact that the burden of proof is higher in a criminal case supports a finding of abuse in a PFA petition, which has the lower standard of proof. *See Off. of Disc. Counsel v. Anonymous Atty.*, 331 A.3d 523, 532 (Pa. 2025) ("Where the first adjudication was made based on a higher standard of proof than the burden applicable in the subsequent case, collateral estoppel may apply. . . . This is based on the logic that when an issue is resolved on a higher burden of proof, it will be resolved in the same way when it is subject to a lower burden of proof."). Accordingly, we conclude that Ms. Mays proved the first prong of the collateral estoppel test. *See Rogers*, 291 A.3d at 877 n.13.

We are further satisfied that Ms. Mays met the remaining elements of collateral estoppel. There was a final judgment on the merits in the criminal matter where Mr. Dougherty was convicted of simple assault and he did not subsequently appeal his judgment of sentence. Mr. Dougherty was also both the defendant in the simple assault trial and in Ms. Mays's PFA petition.[3]

_____

[3] Although Ms. Mays contends that she meets this prong of collateral estoppel because she was in privity with the Commonwealth as the victim in the criminal matter, the test focuses upon "the party against whom the plea is
*(Footnote Continued Next Page)*

Finally, Mr. Dougherty had a full and fair opportunity to litigate whether he committed assault against Ms. Mays at his criminal trial. Thus, the doctrine should have applied to prevent Mr. Dougherty from asserting at the PFA hearing that he did not cause bodily harm to Ms. Mays, where that issue had already been adjudicated at his criminal trial.

Based on this conclusion, we further find that the court's credibility determinations are unsupported by the record, and Ms. Mays provided sufficient evidence of abuse. Although the record does not contain the notes of testimony from Mr. Dougherty's criminal trial, Ms. Mays introduced the criminal complaint and the sentencing order at the PFA hearing. Mr. Dougherty additionally conceded at the PFA hearing that during his criminal trial he admitted to engaging in a physical altercation with Ms. Mays and pushing her into the kitchen counter. *See* N.T. PFA Hearing, 4/7/25, at 48. Despite these exhibits and his admission, the court still found Ms. Mays incredible. *See* Trial Court Opinion, 6/21/25, at 6 (stating that the court "did not find [Ms. Mays] to be credible when she stated that [Mr. Dougherty] lifted her up and ran with her across the kitchen, slamming her into the top kitchen cabinets," because she admitted to "taunting [Mr. Dougherty] by bringing up past arguments in the parties' relationship"). The court instead focused upon Ms. Mays's statement that she provoked Mr. Dougherty, and its subjective

_____

asserted." *Rogers*, 291 A.3d at 877 n.13 (cleaned up). In this case, that is Mr. Dougherty.

belief that she filed a PFA petition to gain leverage in the parties' upcoming custody hearing.[4]  Consequently, it failed to account for Mr. Dougherty's criminal conviction for the same incident that prompted Ms. Mays's PFA petition, and neglected to acknowledge his admission to committing bodily injury against Ms. Mays.

In light of the foregoing, we conclude that the court committed an error of law in refusing to apply collateral estoppel to this case.  Ms. Mays established each element of the doctrine, which should have foreclosed Mr. Dougherty from denying that he committed abuse against her at the PFA hearing.  Moreover, the court's credibility determinations were unsupported by the record, and the evidence was sufficient to support a finding of abuse pursuant to the PFA Act.  Accordingly, we reverse the order denying Ms. Mays's PFA petition and remand for the imposition of a final PFA order.  Upon remand, the court shall determine the length of the order.  **_See Medina v. Green_**, 348 A.3d 1113, 1124 (Pa.Super. 2025) (reversing order and remanding "for a determination as to the length of the final PFA order" where the trial court abused its discretion in denying the appellant's PFA petition).

---

[4] We observe that Mr. Dougherty likewise filed a PFA petition against Ms. Mays before the parties' custody hearing.  Notably, in her PFA petition, Ms. Mays did not request the court to award her temporary custody of the children or place any restrictions on the contact between them and Mr. Dougherty.  **_See_** PFA Petition, 9/10/24, at 5.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/10/2026